IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DEWITT BALDWIN, JR.,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )    **Case. No.: 2:08-CV-2290-RDP** |
| | ) |
| **MICHAEL ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|    **Defendant.** | ) |

**MEMORANDUM OF DECISION**

Dewitt Baldwin, Jr. ("Plaintiff") brings this action pursuant to Section 1631(c)(3) of the Social Security Act ("the Act") denying his claim for Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. § 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.     Procedural History**

Plaintiff applied for SSI benefits on July 28, 2005, alleging an onset date of disability of May 12, 2005. (Tr. 54). Plaintiff's application was denied on December 3, 2005, and he subsequently requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 39-46). Plaintiff's case was heard by ALJ William Lawson on October 4, 2007. (Tr. 26-32, 221-60). In his December 15, 2007 decision, the ALJ determined that Plaintiff was not eligible for SSI benefits because he does not have an impairment or combination of impairments that meet or medically equal a listed disability and he retains the residual functional capacity ("RFC") to perform sedentary work that does not require overhead reaching and does not involve exposure to extreme conditions, such as extreme heat or

humidity. (Tr. 17-24). On January 15, 2008, Plaintiff requested a review of the ALJ's decision. (Tr. 12-13). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner and subject to this court's review. (Tr. 5-7).

Plaintiff was born on December 2, 1962. (Tr. 50). He successfully graduated from high school, although he attended special education classes. (Tr. 225, 247-49). Plaintiff has worked a variety of jobs, including buffing floors at a nursing home for five years in the 1980s, doing maintenance and housekeeping work at a hotel from 1988-1992, and performing day labor at a number of temporary jobs in the early 1990s. (Tr. 70). Plaintiff was also employed as a crane and machine operator for Southeastern Bolt. (Tr. 71). Plaintiff was incarcerated for burglary from 2002-2005. (Tr. 51, 107, 231). Upon his release from prison, Plaintiff worked for approximately three months as a tow truck operator prior to applying for SSI benefits. (Tr. 232-33).

Plaintiff alleges he became unable to work in early May 2005. (Tr. 107). Plaintiff asserts that he suffers from several conditions that prevent him from working, including rheumatoid arthritis, emphysema, severe obstructive pulmonary disease, depression, and mild mental retardation. (Tr. 56, 107, 240-41, 256).

While Plaintiff was in high school, he was given IQ tests to determine his class placement. (Tr. 95-103). On those occasions, once in 1977 and then again in 1978, testing results assigned Plaintiff a verbal IQ of 74, a performance IQ of 61, and a full scale IQ of 66. (Tr. 95, 102).

Plaintiff began seeing physicians at Cooper Green Hospital ("Cooper Green") in Birmingham, Alabama in May 2005. (Tr. 146). A May 29, 2005 medical report shows Plaintiff presented to Cooper Green with complaints of swelling and pain in his knees and shoulders. (Tr. 144). Plaintiff stated that he had been experiencing pain for a period of two or three days. (*Id.*).

Tests revealed no synovitis and minimal knee problems. (Tr. 145). Additional examinations conducted on June 2, 2005, showed emphysematous changes in Plaintiff's right lung, but no severe problems aside from emphysema. (Tr. 139-42). Tests conducted a week later confirmed that Plaintiff suffered from bullous emphysema. (Tr. 135-38). On June 27, 2005, further testing results revealed cellulitis in Plaintiff's right ankle, but no bone abnormalities. (Tr. 128). Plaintiff was examined again on July 6, 2005, and no new changes were identified. (Tr. 127). However, doctors did note that Plaintiff continued to complain about swelling in his legs, hands, and wrists, which he felt affected his ability to walk and sleep. (Tr. 123-25). On July 28, 2005, doctors at Cooper Green diagnosed Plaintiff with acute rheumatoid arthritis. (Tr. 122).

On September 12, 2005, Plaintiff assessed his pain as a six on a scale of one through ten. (Tr. 119). Testing revealed no bone or joint abnormalities in Plaintiff's hands or feet. (Tr. 119-21). Plaintiff was prescribed numerous medications including Prednisone and Methotrexate. (Tr. 120). Plaintiff returned to Cooper Green on September 29, 2005, after having missed a previously scheduled rheumatology appointment. (Tr. 118). Plaintiff reported that he was doing better with the prescribed medication and assessed his pain as a three. (*Id.*). However, Plaintiff returned to Cooper Green on October 3, 2005, reporting a level of pain he rated at a seven, and stating that swelling had returned to his knees and wrists, and indicating he was experiencing stiffness after sleeping. (Tr. 117). The doctors at Cooper Green adjusted Plaintiff's prescriptions accordingly. (*Id.*).

On October 28, 2005, Plaintiff was examined by Dr. Pei Yan Chen, a doctor for the Disability Determination Service ("DDS"). (Tr. 148-52). Dr. Chen concluded that Plaintiff had rheumatoid arthritis with an abnormal musculoskeletal exam. (Tr. 152). Plaintiff was examined by Dr. Deepak

3

Shrivastava in November 2005, and testing revealed Plaintiff had a severe obstructive airway disease. (Tr. 154-65).

On November 30, 2005, Plaintiff underwent a Physical RFC Assessment. (Tr. 166-73). The assessment was performed by Dr. Nancy Jennings. (Tr. 173). Dr. Jennings noted that Plaintiff should avoid ladders, ropes and scaffolds, as well as concentrated exposure to extreme heat, cold, wetness, humidity, vibration, fumes or gases, and other hazards. (Tr. 168, 170). Dr. Jennings concluded that Plaintiff's symptoms were the result of a medically determinable impairment, but that the severity and duration of his reported symptoms were disproportionate to the expected severity and duration of symptoms considering his particular impairments. (Tr. 171). A Psychiatric Review Technique performed by DDS employee Deborah Wright revealed that Plaintiff suffered from no medically determinable mental impairments. (Tr. 174-87).

Plaintiff apparently did not seek medical treatment again until March 2, 2006, when he returned to Cooper Green Hospital. (Tr. 203, 205). Doctors then reported that Plaintiff exhibited bullous emphysematous changes, especially within the right lung, but no active inflammatory disease within the lungs. (Tr. 205).

Plaintiff returned to Cooper Green approximately one year later, on March 7, 2007. (Tr. 200-202, 204). Plaintiff was assessed a primary diagnosis of emphysema, with a secondary diagnosis of rheumatoid arthritis. (Tr. 200). Dr. Patrick Ifediba confirmed that a bullous emphysematous change was present in Plaintiff, however, there was still no active inflammatory disease in his lungs. (Tr. 204). A few days later, Plaintiff was prescribed numerous medications, including Prednisone, Lortab, Wellbutrin, and Naprosyn. (Tr. 198-99).

By July 17, 2007, Plaintiff had been prescribed other medications, including Percocet, and had been counseled to quit smoking. (Tr. 194). At that time, Plaintiff assessed his pain at a three. (*Id.*). One week later, Plaintiff returned to Cooper Green, reporting that his pain was now at a zero. (Tr. 193). However, on August 20, 2007, Plaintiff returned to the hospital and stated that his pain was at an eight. (Tr. 189, 214).

**II.     ALJ Decision**

Determination of disability proceeds under a five step analysis. 20 C.F.R. § 404.1520(a). First, the Commissioner determines if the claimant is engaged in substantial gainful activity. 20 C.F.R. § 1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he is not deemed to be disabled under the Act. Second, the Commissioner determines if the claimant has a severe, medically determinable impairment that meets the durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. 1509. If the claimant does not possess such an impairment, he is not disabled. Third, the Commissioner decides if the impairment meets or medically equals the criteria for an impairment listed in 20 C.F.R. Part 404 Subpart P Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet the listing, the claimant is not disabled. Fourth, the Commissioner determines whether the claimant possesses the RFC to do past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant's RFC is what the claimant can do despite his impairment. If the claimant can perform past relevant work, he is not disabled. Fifth, the Commissioner determines whether the claimant can perform other work based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If he can perform other work, the claimant is not disabled. If the claimant is deemed not to be disabled at any point in the process, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 28, 2005. (Tr. 19). The ALJ found that Plaintiff has the severe impairments of rheumatoid arthritis, degenerative joint disease, chronic obstructive pulmonary disease, and emphysema. (Tr. 19-20). The ALJ further found Plaintiff's depression to be nonsevere because it does not cause more than a minimal limitation in Plaintiff's ability to perform basic work activities. (Tr. 19). The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20). Additionally, the ALJ concluded that Plaintiff retained the RFC necessary to perform sedentary work with no overhead reaching or exposure to extreme conditions. (Tr. 20-22). Although Plaintiff is unable to perform any past relevant work, the ALJ determined that Plaintiff's age, education, work experience, and RFC would allowed him to perform jobs that exist in significant numbers in the national economy. (Tr. 23-24). Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 24).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed for an award of benefits, or, in the alternative, remanded for further consideration. (Doc. #10, at 14). Plaintiff argues (1) that the ALJ erred by failing to consider the evidence of Plaintiff's mild retardation, and (2) that the ALJ erred in holding that Plaintiff's depression was not severe. (Doc. #10, at 10-11).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§

405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ's failure to comment on the scant evidence of Plaintiff's mild retardation does not constitute reversible error and the ALJ appropriately considered Plaintiff's depression.

### A. The ALJ's Failure to Comment on the Scant Evidence of Plaintiff's Mild Retardation Does Not Constitute Reversible Error

Plaintiff's first argument is that the ALJ did not mention the possibility of mild mental retardation despite the fact that as a child he received IQ scores that would satisfy the first prong of Listing 12.05C and thus, would allow his combination of impairments to satisfy the second prong of that listing. (Doc. #10, at 10). Defendant responds by noting that Plaintiff's performance of semi-skilled work in the past is inconsistent with a finding of mental retardation. (Doc. #11, at 9). To support this assertion, Defendant cites *Outlaw v. Barnhart*, 197 Fed. Appx. 825 (11th Cir. 2006).

The facts in *Outlaw* are substantially similar to the facts present here. There, the claimant performed semi-skilled work as a van driver, security guard, and in the shipping and receiving department of a pecan plant. *Id* at 827. The claimant had an IQ that was approximately 70. *Id.* Based on the claimant's history of semi-skilled work and daily activities, the Eleventh Circuit held that substantial evidence supported the ALJ's decision that the first prong of Listing 12.05C was not met. *Id.* at 828.

In this case, a vocational expert ("VE"), who was familiar with Plaintiff's background, testified at Plaintiff's hearing that Plaintiff's jobs as a tow truck driver, machine and forklift operator, and maintenance worker were all classified as semi-skilled. (Tr. 250). Although Plaintiff's IQ scores from his childhood were slightly below 70 (Tr. 95, 102), Plaintiff's semi-skilled work history contradicts his low IQ scores from childhood. Therefore, like in *Outlaw*, substantial evidence supports the conclusion that Plaintiff does not meet the first prong of Listing 12.05C. Consequently, the court does not address the question of whether Plaintiff's combination of impairments could have satisfied the second prong of that listing. Also, because Plaintiff does not meet the first prong of

Listing 12.05C, the ALJ's failure to consider the scant evidence of Plaintiff's mild retardation does not constitute reversible error here.

### B.     The ALJ Appropriately Considered Plaintiff's Depression

Plaintiff's next argument is that the ALJ's determination that his depression is not a severe impairment constitutes reversible error. Plaintiff cites a number of cases suggesting that a claimant "need only show that his impairment is not so slight and its effect is not so minimal" to meet the severity requirement. *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *Stratton v. Bowen*, 827 F.2d 1447, 1453 (11th Cir. 1987); *McCruter v. Bowen*, 791 F.2d 1544 (11th Cir. 1986).

The ALJ considered Plaintiff's depression in light of the four functional areas for evaluating mental disorders as set out in Section 12.00 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). Those four areas are: (1) activities of daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence and pace; and (4) the number of episodes of decompensation. Based on a consideration of the evidence of Plaintiff's depression in light of the four functional areas set out above, the ALJ concluded that Plaintiff's claimed depression caused him no limitation in any of the four areas and was, therefore, nonsevere. (Tr. 19). Depression causing absolutely no functional limitation clearly does not meet even the relatively low "not so slight or minimal" standard from *McDaniel*.

The evidence of Plaintiff's depression is indeed scant. The Psychiatric Review Technique performed by Deborah Wright found no medically determinable mental impairments. (Tr. 174-87). In fact, the only evidence of depression cited by Plaintiff or present in the record is Plaintiff's prescription for Wellbutrin. (Tr. 113). Because none of this exceptionally scant evidence of Plaintiff's depression refutes the finding by the ALJ that Plaintiff's depression is not severe, the court

holds that the ALJ properly considered Plaintiff's depression and that the ALJ's conclusion is supported by substantial evidence.

## VI.     Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this     17th     day of March, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE